# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JAMES NEWMAN,

    Plaintiff,

    v.

WARDEN OF JCI and
PSYCHOLOGIST,

    Defendants.

Civil Action No.:  TDC-21-3169

## MEMORANDUM OPINION

Self-represented Plaintiff James Newman, currently incarcerated at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983. Construed liberally, the currently operative Amended Complaint names as Defendants the Warden and Psychologist at Jessup Correctional Institution ("JCI") in Jessup, Maryland for the time period from October 28 to December 22, 2021. These individuals were identified by the Maryland Attorney General's Office as Warden Thomas L. Wolfe and Dr. Shakora Banks. In the Amended Complaint, Newman claims that he endured "horrible" conditions while confined at JCI, and that he received inadequate medical care. Am. Compl. at 2, ECF No. 8. He seeks monetary damages and an injunction requiring JCI to clean the building and engage extermination services.

Warden Wolfe and Dr. Banks have each filed a separate Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Newman was informed of his right to respond to each motion and filed correspondence which the Court construes as a memorandum in opposition to Warden Wolfe's Motion. Newman filed no separate memorandum in opposition to Dr. Banks's Motion. Having reviewed the submitted materials, the Court finds that no hearing is necessary.

*See* D. Md. Local R. 105.6.  For the reasons set forth below, Defendants' Motions, construed as

Motions for Summary Judgment, will be GRANTED.

## BACKGROUND

Newman was incarcerated at JCI from October 28, 2021 to December 22, 2021.  He alleges

that during that time, the conditions were "horrible" as there were mice, roaches, mold, and mildew

in his cell, as well as mold and mildew in the shower.  Am. Compl. at 2.  Newman states that he

often had to throw food out because it was chewed by mice and roaches, and that it was difficult

to sleep because mice and roaches would crawl on him.   The correctional officers were

"unprofessional and ignorant" and "were unwilling to provide assistance when needed."  Am.

Compl. Ex. 1 at 1, ECF No. 8-1.  Shower temperatures were either so hot that he received second-

degree burns or so cold that he "got sick." *Id.* at 2.  Moreover, the mold and mildew in the showers

made it difficult to breathe while in the shower.  Newman also states that he was generally locked

in his cell 23 hours per day, and that, at one point, inmates were locked down for 48 hours "for

something that had nothing to do with the . . . inmates or any other inmate on the tier." *Id.* at 3.

The lockdown prevented him from communicating with his family, including his medically fragile

son, which caused him great stress.  Finally, he states that JCI did not provide adequate blankets

or clothing during the winter months.

As to his medical care, Newman asserts that upon transfer from the local detention center

to JCI, he was not given his "psych" medications, and despite submitting sick call requests to see

a psychologist or psychiatrist, he was not seen for three weeks. *Id.* at 2-3.  He states that he is

supposed to be consistently medicated to "keep my condition under control." *Id.* at 3.  Newman

states that generally, his sick calls were "either not answered at all or finally answered 6 to 7 days

later." *Id.* at 2.

According to Newman, as a result of these conditions, he experienced suicidal thoughts, lost his appetite, "was unhealthily losing weight," and was on edge and irritated. *Id.* at 3. He claims that these conditions could have led to altercations that could have harmed him or led to an infraction. Newman, however, does not allege that he actually experienced physical harm or received an infraction.

In a declaration, Warden Wolfe has stated that he has never personally communicated with or interacted with Newman, nor was he ever made aware of Newman's concerns regarding JCI. Defendants assert that, based on a review of relevant records, Newman has never filed an Administrative Remedy Procedure complaint ("ARP") at any time during his incarceration, nor did he do so between October 2021 and December 2021 while at JCI. Further, a review of records reveals that Newman has never pursued a grievance through the Inmate Grievance Office at any time during his incarceration. In opposing Defendants' Motions, Newman has stated that it was difficult to obtain ARP forms while he was at JCI due to COVID-19 protocols, but he recalls submitting an ARP complaint to a tier officer. He states that he now believes "the ARP probably never made its way to its destination." Opp'n at 1, ECF No. 26.

Medical records reveal that Newman received an intake evaluation when he arrived to JCI on October 28, 2021. During that visit, Newman stated that he was taking psychiatric medications and muscle relaxants. Although he referenced mental health issues and requested a mental health evaluation and management so that he could receive his medications, he did not express any mental health concerns that would have required immediate intervention. The medical provider recommended that Newman receive a follow-up appointment in seven days, made a referral for him to see a psychiatrist, and cleared Newman to enter the general population.

Newman received a follow-up appointment with a social worker on November 4, 2021. Upon evaluation, Newman did not receive any additional referrals beyond the October 28, 2021 referral to psychiatry. Newman was informed about how to access mental health services and was cleared to remain in the general population. Also on November 4, 2021, Newman submitted a sick call request seeking the psychiatry referral. Two days later, on November 6, 2021, Newman received his initial psychiatric evaluation, after which medications were ordered to address anxiety and mood concerns.

On December 8, 2021, Newman submitted another sick call request relating to concerns about his psychiatric medications and received a psychiatric appointment two days later, on December 10, 2021. For both the November 4, 2021 and December 8, 2021 sick call requests, Dr. Banks reviewed the requests and made the referrals for the psychiatric appointments that occurred two days later.

Construed liberally, the Amended Complaint alleges that Defendants have violated his rights under the Eighth Amendment to the United States Constitution by placing him in conditions of confinement constituting cruel and unusual punishment, and by acting with deliberate indifference to his serious medical needs.

## DISCUSSION

In their Motions, Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that: (1) under the Eleventh Amendment to the United States Constitution, they are immune from claims against them in their official capacities; (2) Newman failed to exhaust administrative remedies; (3) Newman has not alleged any personal involvement by Defendants as required to establish liability; (4) Newman has failed to allege sufficient facts to show, and the record does not support the

4

conclusion, that Defendants violated his Eighth Amendment rights; and (5) Defendants are entitled to qualified immunity.

With his Motion, Warden Wolfe has also filed Motion to Seal, which seeks the sealing of Newman's medical records submitted with Warden Wolfe's Motion. Where Newman's privacy interest in his medical records outweighs the public's general interest in court filings, the Motion to Seal will be granted.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached several declarations and other exhibits to their Motions. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are

considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Newman responded only to Warden Wolfe's Motion and has not asserted that he needs discovery in order to address the Motion. Though he was informed of his right to respond, Newman has failed to respond to Dr. Banks' Motion. Accordingly, the Court will construe Defendants' Motions as motions for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not

6

simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    Eleventh Amendment

Although Newman has not stated whether he is suing Defendants in their official or individual capacities, Defendants argue that because they are employees of the State of Maryland, any claims against them in their official capacities are barred by the Eleventh Amendment. *See* Md. Code Ann., State Gov't § 12-101(a) (LexisNexis 2021) (defining "state personnel"). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity to a

suit of this kind in federal court.  Accordingly, Defendants are immune from suit for actions taken in their official capacities.  Any such claims will be dismissed.

## III.    Exhaustion of Administrative Remedies

Defendants assert that Newman's claims should be dismissed because he has failed to exhaust administrative remedies.  Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018).  Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available.  *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones").  "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable:  when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," when the procedure is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation."  *Ross*, 578 U.S. at 643-44.

8

In the Maryland correctional system, the Administrative Remedy Procedure is "the procedure established by the Commissioner for inmate complaint resolution." Md. Code Regs. § 12.07.01.01B(1) (2023). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. *Id.* § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id.* § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (LexisNexis 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in the appropriate Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, the declarations submitted by Defendants, from officials who have reviewed the relevant records, demonstrate that Newman has never filed an ARP at any time during his incarceration, nor did he do so between October 2021 and December 2021 while he was incarcerated at JCI. Sellman Decl. ¶¶ 2-3, Mot. Summ J. Ex. 1, ECF No. 22-2; Truitt Decl. ¶¶ 2-3, Mot. Summ. J. Ex. 2, ECF No. 22-3. Further, Newman has never filed a complaint with the IGO at any time during his incarceration. Woolford Decl. ¶ 3, Mot. Summ. J. Ex. 3, ECF No. 22-4. Newman does not dispute Defendants' claim that he did not fully exhaust administrative remedies, but he has stated in his memorandum in opposition to the Motions that he once provided an ARP complaint to a tier officer at JCI and that he believes that it was never processed. That fact, even if true, does not excuse the failure to exhaust administrative remedies. Where Newman has not stated that he took steps to follow up on that submission, and he does not even claim that

he sought to submit any complaint to the IGO, any such submission does not satisfy any of the conditions that could excuse a failure to exhaust. *See Ross*, 578 U.S. at 643–44. Accordingly, the Court will grant the Motion because Newman did not pursue and exhaust all available administrative remedies before filing suit. *See* 42 U.S.C. § 1997e(a).

## IV.    Warden Wolfe

Even if the Court could consider Newman's claims on the merits, the claims against Warden Wolfe fail for the separate reason that Newman has neither alleged sufficient facts nor provided sufficient evidence to show that Warden Wolfe is personally liable for the alleged constitutional violations. For claims asserted under section 1983, such as the constitutional claims advanced by Newman, a defendant may not be held liable based on *respondeat superior*, or vicarious liability. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). Thus, a defendant's liability under § 1983 generally can be established only if the defendant personally participated in the constitutional violation. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). A defendant who is a supervisor may be held liable if the following conditions for supervisory liability are met: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted).

Nothing in the Amended Complaint, or any other filing, suggests that Warden Wolfe had any personal involvement in establishing the conditions of confinement complained of by Newman, or in any decisions relating to when Newman would receive psychiatric care and what

care he would receive. The allegations also do not support the conclusion that Warden Wolfe had any knowledge of the conditions that would support a finding of supervisory liability, or that the conditions were caused by his actions or inactions in response to any such knowledge. Indeed, Warden Wolfe has asserted, and Newman has not disputed, that he has never personally communicated with or interacted with Newman, and he was never made aware of Newman's complaints about the conditions of confinement or medical care at JCI. Certainly, if Newman's troubling account of the conditions of confinement is accurate, particularly those of rodent and pest infestation, JCI is now on notice of them and must take actions to address them. Nevertheless, in the absence of allegations and evidence of any personal participation by Warden Wolfe, or of any evidence substantiating supervisory liability, the Court will grant summary judgment to Warden Wolfe on the claims asserted against him relating to the conditions of confinement and the allegedly inadequate medical care.

## V.    Dr. Banks

Likewise, the Court finds that even if the claims against Dr. Banks can be considered on the merits, neither the allegations nor the evidence are sufficient to sustain them. Even construed liberally, the claims against Dr. Banks are limited to those alleging inadequate medical care. In order to state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

A review of Newman's allegations and the record evidence establishes that Newman has not provided a sufficient basis to support a deliberate indifference claim against Dr. Banks. Newman received an intake evaluation upon his arrival to JCI on October 28, 2021, was given a follow-up appointment, and had a psychiatric evaluation on November 6, 2021, approximately one week after his arrival, at which psychiatric medication orders were placed to address anxiety and

12

mood concerns. Dr. Banks's only identified personal involvement in Newman's medical care was to review two sick call requests for psychiatric care, on November 4, 2021 and December 8, 2021. In both instances, Dr. Banks referred Newman for a psychiatric appointment, and Newman received that appointment only two days after submitting the sick call request. Notably, Newman neither alleges nor provides evidence of any physical or psychological injury, let alone a serious medical condition, that resulted from his alleged lack of medical care. Under these circumstances, the Court finds no genuine issue of material fact on whether Dr. Banks acted with deliberate indifference to a serious medical need and will thus grant summary judgment to Dr. Banks.

Having concluded that Newman's claims fail for the reasons stated above, the Court need not and will not address Defendants' remaining arguments in the Motions.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, or in the Alternative, Motions for Summary Judgment, will be GRANTED. Warden Wolfe's Motion to Seal will also be GRANTED. A separate Order shall issue.

Date:  September 11, 2023

THEODORE D. CHUANG
United States District Judge

13